**Steven Ray WINTERS, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 09–94–175 CR.**

Court of Appeals of Texas,
Beaumont.

April 26, 1995.

James R. Makin, Beaumont, for appellant.

Tom Maness, Dist. Atty., John R. Dewitt, Asst. Dist. Atty., Beaumont, for State.

Before WALKER, C.J., and BURGESS and STOVER, JJ.

## OPINION

STOVER, Justice.

Appellant was indicted and charged with possession of a controlled substance, to wit: cocaine. Appellant filed a motion to suppress evidence in which he complained of police misconduct in seizing cocaine from the appellant pursuant to an unlawful detention, search, and seizure without probable cause. The trial judge denied appellant's motion to suppress evidence. Subject to the ruling on the motion to suppress, appellant pleaded guilty on March 30, 1994, to possession of a controlled substance. The trial court found appellant guilty and imposed punishment at 20 years incarceration and a $1.00 fine.

On May 9, 1994, appellant filed a timely notice of appeal. His sole point of error contends the trial court erred in failing to sustain appellant's motion to suppress certain items seized and removed from the person and property of the appellant because of a warrantless arrest committed by an arresting officer without reliable information from a credible source. The motion to suppress was presented to the trial judge and, after a hearing, the motion was denied. Appellant's point of error is overruled and the judgment is affirmed.

### Background of Case

State's witness, Alfred Charles Hamm, testified that he was a bus driver for the Greyhound Bus Lines Company, and that on May 9, 1991, he was en route from Houston to New Orleans. He further testified that appellant was a passenger whom he picked up in Jacinto City in Harris County; appellant had a little blue bag with him. Witness Hamm related that, as he drove eastward towards Beaumont, he saw appellant go to the restroom on the bus and stay there "about 15 to 30 minutes and while he was in there, I started smelling a strange odor and I know it was cocaine." Witness Hamm explained that there is a small vent on the bus by the side of the driver. Because of the presence of the vent, the driver can smell any odor that comes out of the restroom. He further testified that it is illegal to smoke on Greyhound, that it is a violation of federal law, and that it is necessary to have a vent to detect such illegal activity.

During the course of direct examination, witness Hamm went on to testify that he knew the odor of burning cocaine, that he had smelled it on many occasions because he had been around it all his life, and that there was no question in his mind that he recognized the odor.

In testifying on voir dire by defense counsel, witness Hamm explained that he had an

uncle who died from cocaine abuse. Although he admitted that he had never received training in chemical analysis or drug detection, witness Hamm testified that he was raised in the heart of the ghetto and had been around drugs all his life. Defense counsel was unable to "shake" witness Hamm's testimony concerning Hamm's personal knowledge of the smell of burning cocaine.

Upon further direct examination, witness Hamm related that the smell of cocaine makes him vomit. In fact, he stated that "I got down the road about 2 miles, and I had to stop and throw up." After arriving in Beaumont, the bus driver saw an officer on the side of the road, made a U-turn, got off the bus, and told the officer, John Cross with the Beaumont Police Department, what he had seen and smelled.

Officer Cross testified for the State concerning what witness Hamm had told him regarding the amount of time that appellant spent in the bathroom, the smell of cocaine, and Mr. Hamm's personal knowledge of the smell of cocaine. Officer Cross also testified that witness Hamm told him that he saw appellant "reaching down like he was shoving something down inside either his shoe or his sock." Officer Cross explained that "all of that combined, based on the fact that he (Hamm) said he was aware of what it smelled like and how long the guy had been in the bathroom and his actions after he confronted him about it, led me to believe that I had probable cause to detain him."

In patting down the appellant, Officer Cross felt a lump in appellant's sock, pulled it out, and found it to be a small, beige-colored rock that appeared to be cocaine. The blue bag, which appellant had carried on the bus, was stuffed up under the seat; when asked if this was his bag, appellant replied "[y]es, sir." In inventorying the bag and looking for identification the officer found a large amount of crack cocaine in the form of "cookies."

Officer Cross stated that, based upon the information supplied by Hamm, he (the offi-

cer) had a reasonable belief that a felony had been committed. Officer Cross also testified there was no way to get a warrant prior to appellant's departure from the area on the bus.

■■■ In reviewing the trial court's denial of the motion to suppress, the following legal principles are controlling:

1. The standard of review governing a trial court's ruling on a motion to suppress is whether the court clearly abused its discretion. *Maddox v. State,* 682 S.W.2d 563, 564 (Tex.Crim. App.1985);

2. In reviewing a ruling on a motion to suppress evidence, the evidence is viewed in the light most favorable to the trial court's ruling. *State v. Gilliam,* 832 S.W.2d 119, 121 (Tex. App.—Houston [14th Dist.] 1992, no pet.);

3. In a suppression hearing, the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Romero v. State,* 800 S.W.2d 539, 543 (Tex.Crim.App. 1990);

4. The trial court may accept or reject any or all of the witnesses' testimony. *Id.* at 543;

5. In reviewing the trial court's decision, an appellate court does not engage in its own factual review; it determines only whether the record supports the trial court's fact findings. *Id.* at 543;

6. If the trial court's fact findings are supported by the record, an appellate court is not at liberty to disturb the findings, absent an abuse of discretion. *Id.* at 543;

7. On appellate review, the court normally will only address the question of whether the trial court improperly applied the law to the facts. *Id.* at 543;

8. A police officer is permitted to temporarily detain a person if he has reason

to be suspicious based on articulable facts that the detainee is connected in some unusual activity *or* some indication that the activity is related to some possible criminal behavior even though there is no probable cause for arrest. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968);

9. A police officer may briefly stop a suspicious individual in order to determine the individual's identity. *Gearing v. State,* 685 S.W.2d 326, 327–328 (Tex.Crim.App.1985); *Johnson v. State,* 658 S.W.2d 623, 626 (Tex.Crim.App.1983); *Howe v. State,* 874 S.W.2d 895, 899–900 (Tex.App.—Austin 1994, no pet.);

10. The "totality of the circumstances" is the standard of review for probable cause. *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

Relying upon *Illinois v. Gates* ("totality of circumstances" test), appellant seeks relief under the United States Constitution; appellant has not urged a state constitutional remedy.[1]

Appellant has alleged that the police officer did not have probable cause to search appellant and, that, consequently, the trial court erred in failing to grant appellant's motion to suppress. The basis for appellant's allegation of lack of probable cause is the untested reliability of the bus driver informant, as well as the lack of verification of the informant's tip. In relying upon *Gates,* appellant argues that the trial court did not properly apply the "totality of the circumstances" test, since the trial court accorded credibility to a "stranger's accusations" where there was no corroborating evidence, no additional eyewitness testimony, and no history of previous reliable information provided by the bus driver.

The informant in this case, however, is unlike that in *Illinois v. Gates.* There, the

information communicated to the police came from an anonymous letter informing the police of the defendants' alleged drug trafficking activities, along with details of an alleged imminent transaction. In formulating the "totality of the circumstances" test to determine the existence of probable cause, the Supreme Court noted that informants' tips vary in their value and reliability, and that rigid legal rules are ill-suited to an area of such diversity. For that reason, the court adopted the "totality of the circumstances" test, which allows more flexibility in the evaluation of the informant.

The appellant has brought forth the contention that bus driver Hamm was, in effect, an informant and, as such, must meet the criteria for informants established in *Illinois v. Gates.* Appellant also relies upon the dissenting opinion in *State v. Carter,* 882 S.W.2d 940, 945 (Tex.App.—Beaumont 1994, pet. granted), for the proposition that there was no evidence of the reliability of the information and that the informant's basis of knowledge was mere suspicion and conjecture.

As the Supreme Court stated in *Illinois v. Gates,* 462 U.S. at 232, 103 S.Ct. at 2329, "Informants' tips doubtless come in many shapes and sizes from many different types of persons." Those "different shapes and sizes" include, among others, anonymous letters, *Gates,* 462 U.S. at 225, 103 S.Ct. at 2325; anonymous phone calls, *Amores v. State,* 816 S.W.2d 407, 415 (Tex.Crim.App. 1991); crime victims, *Nelson v. State,* 855 S.W.2d 26 (Tex.App.—El Paso 1993, no pet.); confidential informants, *Trevino v. State,* 875 S.W.2d 373 (Tex.App.—Corpus Christi 1994, no pet.); police broadcasts, *Amores v. State,* 816 S.W.2d at 415; and private citizens, *Esco v. State,* 668 S.W.2d 358 (Tex.Crim.App. 1982).

 In the instant case, the informant is not a "snitch." He is an average citizen who reported a crime. In that particular situation, Texas courts have given a certain

---

1. *Autran v. State,* 887 S.W.2d 31, 37–42 (Tex. Crim.App.1994), discusses the state constitution-

al remedy in a different context.

deference to the named, private citizen informant. Where a named informant is a private citizen, whose only contact with the police is a result of having witnessed a criminal act committed by another, the credibility and reliability of the information are inherent. *Esco v. State*, 668 S.W.2d at 360–361; *Wood v. State*, 573 S.W.2d 207, 216, n. 2 (Tex.Crim. App.1978); *Nelson v. State*, 855 S.W.2d at 30; *Mason v. State*, 838 S.W.2d 657, 660 (Tex. App.—Corpus Christi 1992, pet. ref'd); *Tribble v. State*, 792 S.W.2d 280, 284 (Tex.App.—Houston [1st Dist.] 1990, no pet.). According to the Texas Court of Criminal Appeals in *Johnson v. State*, 803 S.W.2d 272, 289 (Tex. Crim.App.1990), *cert. denied*, 501 U.S. 1259, 111 S.Ct. 2914, 115 L.Ed.2d 1078 (1991), *overruled on other grounds by Heitman v. State*, 815 S.W.2d 681 (1991), source information supplied by an average citizen is "much less likely to produce false or untrustworthy information." Mr. Hamm was a gainfully employed private citizen, who provided to Officer Cross information based upon Hamm's perception of a crime (through the senses of smell and sight) and upon Hamm's personal knowledge of the smell of cocaine. Under the "private citizen" informant doctrine, the credibility and reliability of the information which he provided are inherent.

■ We find exigent circumstances existed which would justify the warrantless search of appellant. As borne out by the record, the appellant was travelling on a bus on Interstate 10 between Houston and Beaumont; the bus was en route to New Orleans. By the time a search warrant could be obtained, appellant would no longer be in the vicinity, since he was a passenger on a bus on a public highway; furthermore, he was aware that criminal allegations had been made against him; and, finally, he could disembark at any of a number of cities along Interstate 10 which, of course, traverses more than one state. Under that set of circumstances, the relevant question (when determining the propriety of a warrantless arrest when exigent circumstances are alleged) is whether the information available to the arresting officer would justify the belief that the defendant would take flight if not placed in custody. In the instant case, Officer Cross had ample reasons to believe that flight was imminent. There was no time to obtain a warrant, and, thus, the warrantless arrest was justified under TEX.CRIM.PROC.CODE ANN. art. 14.04 (Vernon 1977). *Tribble v. State*, 792 S.W.2d at 284; *Crane v. State*, 786 S.W.2d 338, 347 (Tex.Crim.App.1990); *DeJarnette v. State*, 732 S.W.2d 346 (Tex.Crim.App.1987).

In the instant case, the trial judge denied appellant's motion to suppress and expressed the grounds for that denial as follows:

THE COURT: In connection with the motion to suppress, The Court will find based upon the testimony of the driver, Mr. Hamm, of his knowledge of the drugs and of drugs, the smelling, the actions of the defendant, based upon the fact that he is a bus driver driving a bus, no showing that there is any question about the liability [sic], based upon the fact not only that he called forward to have police meet him but at the first opportunity of a police officer available that he stopped, based upon the corroboration of the facts as told the police officer, the Court finds that the totality of the circumstances justify denying the motion to suppress.

We hold that the finding of the trial judge is supported by the record, that there is no abuse of discretion, and that the trial judge properly applied the law to the facts. The appellant's sole point of error is overruled and the judgment of the trial court is affirmed.

AFFIRMED.

BURGESS, Justice, concurring.

I concur in the result. The majority analyzes this case under both a warrantless search and a warrantless arrest scenario. However, the officer never attempted to justify his actions under any rationale other than a warrantless arrest. I would affirm on that basis alone. *See Eisenhauer v. State*, 678 S.W.2d 947 (Tex.Crim.App.1984).