NO. 07-00-0571-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

SEPTEMBER 30, 2002

_____

CONRADO MALTOS LOPEZ, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 56TH DISTRICT COURT OF GALVESTON COUNTY;

NO. 99CR1745; HONORABLE NEIL CALDWELL, JUDGE

_____

Before BOYD, C.J., and QUINN and REAVIS, JJ.

Upon a plea of not guilty, appellant Conrado Maltos Lopez was convicted by a jury of aggravated assault, twice enhanced, and the trial court assessed punishment at twenty-five years confinement. By seven points of error, appellant contends (1) his conviction is void because it was enhanced by a 1991 conviction that was based on 1986 and 1987 convictions obtained in violation of his right to counsel under the United States and Texas

Constitutions and the Texas Code of Criminal Procedure; (2) the terms "cut and stabbed" in the indictment were unnecessarily specific allegations requiring proof to sustain the conviction and there was no evidence that the victim was stabbed; (3) the trial court erred in overruling his objection to the inclusion in the jury charge other means of committing aggravated assault other than that alleged in the indictment; (4) it was error to include an affirmative deadly weapon finding in the judgment because it was also used as an essential element of the offense alleged in the indictment; (5) use of the same conduct to support an element of the offense and to also make a deadly weapon finding violates double jeopardy; (6) the trial court erred in denying his motion to suppress and introducing the knife into evidence because it was inadmissible under an unjustified warrantless arrest in violation of the United States and Texas Constitutions and the Texas Code of Criminal Procedure; and (7) the trial court erred in denying his requested multiple assailant jury charge. Based upon the rationale expressed herein, we affirm.

On the afternoon of October 4, 1999, appellant and his girlfriend, Linda, were making a telephone call at a local convenience store in Galveston, Texas, when complainant, a former boyfriend of Linda's, arrived in a truck with his friend Andrew. Complainant waited in the truck while Andrew went into the store to buy complainant a beer. Complainant testified that the window on the passenger's side was down and that the door was broken and did not open. He further testified that although he was not acquainted with him, appellant approached the truck and "punched" him in the face in

2

retaliation for damage he allegedly had done to Linda's car after she broke up with him. According to complainant's testimony, he noticed that appellant had his hands in his pockets as if looking for something. As Andrew exited the store, appellant and Linda were walking away and Andrew heard Linda say, "not here."

Later that day at approximately 6:00 p.m., complainant, Andrew, and his two brothers, Albert and Raymond were gathered in front of Raymond's home. Complainant, a mechanic, was repairing the passenger door to Raymond's truck. As appellant and Linda were walking toward her home which was located across the street from Raymond's home, appellant crossed the street and approached complainant. Albert, a friend of appellant's for ten years, testified that appellant appeared "pissed off" and Albert told him not to start trouble. Appellant told Albert to get out of the way.

Complainant testified that when confronted a second time, he felt uneasy and threatened because he noticed that appellant's hands were in his pockets. He threw a can of beer on appellant. Andrew testified that he observed a silver-tipped object in appellant's pocket. An altercation ensued and appellant pulled a knife out of his pocket and cut complainant's neck. Albert attempted to go inside the house to call the police, but after finding the door locked, he noticed two pair of tree trimmers on the porch and provided one to complainant to defend himself. He used the second pair to scare appellant away. Raymond unlocked the door to his house and went inside to call the

3

police. Linda testified that appellant panicked after he realized he cut complainant and told her he was going to his brother's house. She remained at the scene.

Officer Owens arrived at the scene in response to a disturbance call and was informed by witnesses that appellant had cut complainant. He observed Albert holding a bloody washcloth to complainant's neck. After Officer Heyse arrived as backup, Albert offered to show him where appellant had gone and urged him to "hurry up" because he believed appellant was on his way out of town. Appellant's brother's house was not far from the crime scene and as Officer Heyse approached the alley, Albert identified appellant in the back seat of a moving vehicle at the end of the alley. Appellant's brother was driving the car and his wife and their four children were also passengers. Heyse blocked their path with his patrol car and activated his lights. He ordered everyone out of the car and took appellant down to the ground to arrest and handcuff him. He helped appellant up and then conducted a pat down search and discovered the knife used to cut complainant.

By his first point of error, appellant contends his conviction is void because it was enhanced by a 1991 conviction which was based on 1986 and 1987 convictions obtained in violation of his right to counsel under the United States and Texas Constitutions and the Texas Code of Criminal Procedure.[1] We disagree. Where an indictment relies on a prior

---

[1]Unless otherwise designated, all references to articles are to the Texas Code of Criminal Procedure.

void conviction for purposes of enhancement, the indictment contains a cognizable defect and is voidable. Ex parte Patterson, 969 S.W.2d 16, 19 (Tex.Cr.App. 1998). The enhancement portion of the indictment is subject to being voided by compliance with the applicable rules of procedural default, (*i.e.*, requiring a defendant to object to any defects of substance or form in the charging instrument prior to the day of trial). *Id.*; *see also* article 1.14(b). Appellant's failure to object to any defect in the enhancement portion of the indictment waived the error by procedural default. Moreover, penitentiary packets of appellant's prior convictions were admitted without objection and established that he was represented by counsel in the underlying cases used to enhance his conviction. Point of error one is overruled.

By point of error two, appellant alleges charge error by the addition of the terms "cut and stabbed" as unnecessarily specific allegations requiring proof to sustain the conviction, and that there was no evidence that the victim was stabbed. Article 36.14 provides that in order to preserve charge error for review, a defendant must present his specific objections either in writing or orally to the court reporter in the presence of the court and State's counsel. During the charge conference the following discussion occurred:

> [Defense counsel]: As far as just grammar, if you will, in the body on page 4 the fifth line from the bottom up, it says: "And then he shot the said [complainant]." We don't have a shooting incident in this case. So that needs to be changed to "stabbed."
>
> Court: Or cut.

5

[Defense counsel]: Cut. Changed to cut. He cut the said [complainant].

[Prosecution]: I think probably to track what's in the indictment we need to say "stabbed or cut."

Court: We'll change on page 4 the fifth line from the bottom strike "shot" and put "stabbed or cut."

Counsel and the trial court then proceeded to discuss other portions of the charge.

By his brief, appellant specifically asserts that defense counsel objected to inclusion of "cut or stabbed" in the charge. However, our review of the charge conference did not reveal a specific objection regarding this complaint. *See* Tex. R. App. P. 38.1(h) (requiring the brief to contain record references for the contentions made). However, mindful of Rule 38.9, which requires briefing rules to be liberally construed, we address appellant's complaint. The indictment alleged that appellant caused serious bodily injury to complainant by cutting *and* stabbing the said complainant with a knife . . . . (Emphasis added). The trial court, however, charged the jury that appellant injured complainant by cutting *or* stabbing. (Emphasis added).

Although an indictment may allege differing methods of committing an offense in the conjunctive, it is proper for a jury to be charged in the disjunctive. Kitchens v. State, 823 S.W.2d 256, 257 (Tex.Cr.App. 1991) (en banc), *cert. denied*, 504 U.S. 958, 112 S.Ct. 2309, 119 L.Ed.2d 230 (1992). It is appropriate where alternate theories of committing an offense are submitted to a jury in the disjunctive for the jury to return a general verdict if the evidence is sufficient to support a finding under any of the theories submitted. *Id.*

Several witnesses, including appellant and Officer Owens testified that appellant had been deeply cut in his neck area. Thus, no error occurred by charging the jury in the disjunctive that appellant caused complainant's injury by "cutting or stabbing." Point of error two is overruled.

By point of error three, appellant contends the trial court erred in overruling his objection to the inclusion in the jury charge other means of committing aggravated assault other than that alleged in the indictment. Appellant argues that because he was charged in the indictment with assault, aggravated by the use or exhibition of a deadly weapon, the definition of aggravated assault in the jury charge should have been limited to section 22.02(a)(2) of the Texas Penal Code, namely "[a] person commits an offense if the person commits assault as defined in Section 22.01 and the person: . . . (2) uses or exhibits a deadly weapon during the commission of the assault." He further argues the inclusion of the statutory definition of "serious bodily injury" in the jury charge was error. We disagree.

The charge submitted to the jury included the statutory definitions of "assault," "aggravated assault," "bodily injury," "serious bodily injury" and "deadly weapon." The record of the charge conference reveals only two objections specifically overruled by the trial court, neither of which relate to the inclusion of the definitions about which appellant now complains. All other differences were resolved by agreement during the charge conference. An appellant who complains on appeal of an unobjected-to error in the charge will obtain a reversal only if the error was so egregious and created such harm that he did

7

not receive a fair and impartial trial. Barrera v. State, 982 S.W.2d 415, 417 (Tex.Cr.App. 1998) (en banc). Where however, the application paragraph correctly instructs the jury, an error in the abstract instruction is not egregious. Medina v. State, 7 S.W.3d 633,640 (Tex.Cr.App. 1999) (en banc), *cert. denied*, 529 U.S. 1102, 120 S.Ct. 1840, 146 L.Ed.2d 782 (2000). The inclusion of a merely superfluous abstraction does not produce reversible error in the court's charge because it has no effect on the jury's ability fairly and accurately to implement the commands of the application paragraph or paragraphs. *Id.*

Appellant cites Sandig v. State, 580 S.W.2d 584, 586 (Tex.Cr.App. 1979) for the proposition that an overly broad definition in the abstract instruction can constitute error when it authorizes conviction on an unalleged theory when read in combination with the application paragraph of the charge. However, the *Sandig* Court announced:

> [w]hile it is true that an abstract statement of the law that goes beyond the allegations in the indictment ordinarily will not present reversible error, that is true because ordinarily such expansions on the indictment's allegations are effectively restricted by the charge's application of the law to the facts, which should limit the jury's deliberations to the allegations in the indictment supported by evidence.

*Id.* The definition of "serious bodily injury" was undoubtedly required because the term was used in the charge's statutory definition of "deadly weapon." Therefore, the only arguably superfluous definition was the complete statutory definition of "aggravated assault" rather than one limited to use or exhibition of a deadly weapon. We conclude there was no reversible error by the inclusion of the complete aggravated assault definition under section 22.02 of the Penal Code because the application paragraph of the jury

8

charge appropriately limited the jury's considerations to the allegations in the indictment. Point of error three is overruled.

By point of error four, appellant contends it was error to include an affirmative deadly weapon finding in the judgment because it was also an essential element of the offense alleged in the indictment. We disagree. When the fact finder makes an affirmative finding as to deadly weapon use, a trial court shall enter the finding in the court's judgment. Article 42.12, § 3g(a)(2) (Vernon Supp. 2002). The jury makes an affirmative finding of deadly weapon use when (1) use of a deadly weapon has been specifically alleged (using the nomenclature "deadly weapon") in the indictment and the jurors find the defendant guilty, "as charged in the indictment"; (2) the weapon allegedly used is a deadly weapon per se; or (3) the jurors have answered affirmatively a special issue. Polk v. State, 693 S.W.2d 391, 396 (Tex.Cr.App. 1985) (en banc). Where the jury is trier of fact at the guilt-innocence phase and the jurors make an affirmative deadly weapon finding, the trial court has no discretion and must enter in its judgment the jury's finding. Ex parte Poe, 751 S.W.2d 873, 876 (Tex.Cr.App. 1988) (en banc). The jury found appellant guilty "as charged in the indictment," and the indictment alleged the use of a deadly weapon. Thus, the statute required the trial court to enter a deadly weapon finding, even without submission of the special issue to the jury. Brooks v. State, 900 S.W.2d 468, 474 (Tex.App.–Texarkana 1995, no pet.). Point of error four is overruled.

By point of error five, appellant contends using the same conduct to find an essential element of the offense and also support a deadly weapon finding in the judgment violates double jeopardy. We disagree. Appellant cites no supporting authority for his contention that the allegation of use or exhibition of a deadly weapon as an aggravating element of the assault offense prohibits the trial court from also using the allegation to support a deadly weapon finding. However, appellant concedes that his argument has been rejected in Martinez v. State, 883 S.W.2d 771, 772 (Tex.App.–Fort Worth 1994, pet. ref'd); *see also* Thomas v. State, 2 S.W.3d 640, 642 (Tex.App.–Dallas 1999, no pet.). Because a deadly weapon finding does not affect the assessment of punishment, but only affects the amount of the assessed sentence that must be served, jeopardy does not bar a deadly weapon finding when the deadly weapon allegation is also an element of the offense. Pachecano v. State, 881 S.W.2d 537, 546 (Tex.App.–Fort Worth 1994, no pet.). As the *Martinez* court stated, "[w]e see nothing that would lead us to any other conclusion but that the legislature intended for the deadly weapon provisions to apply in every felony case as the context of the law suggests." 883 S.W.2d at 774. In this case, use of a deadly weapon as an essential element of the offense and inclusion of a deadly weapon finding in the judgment created no conflict with the range of punishment. Therefore, double jeopardy was not implicated. Point of error five is overruled.

By point of error six, appellant contends the trial court erred in denying his motion to suppress and introducing the knife into evidence because it was inadmissible under the

10

United States and Texas Constitutions, and violated his rights under the Texas Code of Criminal Procedure. We disagree. In reviewing a trial court's denial of a motion to suppress, almost total deference is afforded to the trial court's decision on mixed questions of law and fact that turn on an evaluation of credibility and demeanor. State v. Ross, 32 S.W.3d 853 (Tex.Cr.App. 2000); Guzman v. State, 955 S.W.2d 85, 89 (Tex.Cr.App. 1997). However, for mixed questions of law and fact which do not fall within this category, we may conduct a *de novo* review. Hernandez v. State, 957 S.W.2d 851, 852 (Tex.Cr.App. 1998). By its brief, the State asserts that the facts are not disputed; however, appellant's sister-in-law testified that at the time appellant was arrested they were en route to the scene of the crime to work things out because of the friendship Albert and appellant's brother shared. The State, on the other hand, by its witnesses attempted to justify the warrantless arrest and search on the basis that Officer Heyse observed conduct that indicated appellant might escape. Thus, we review the denial of the motion to suppress giving great deference to the trial court.

At a hearing on a motion to suppress, the initial burden rests on the defendant to establish that a warrantless arrest and search occurred. Russell v. State, 717 S.W.2d 7, 9 (Tex.Cr.App. 1986) (en banc). Once a defendant meets his initial burden, the burden of proof shifts to the State to show that a warrant existed or that the warrantless arrest was justified by probable cause. Stull v. State, 772 S.W.2d 449, 453 (Tex.Cr.App. 1989). Probable cause exists where the facts and circumstances within the officer's knowledge

11

and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that a particular person has committed or is committing an offense. Amores v. State, 816 S.W.2d 407, 413 (Tex.Cr.App. 1991) (en banc).

Generally, police officers must always obtain a warrant prior to taking someone into custody. Crane v. State, 786 S.W.2d 338, 346 (Tex.Cr.App. 1990) (en banc). However, article 14.04 provides an exception to the general rule "[w]here it is shown by satisfactory proof to a peace officer, upon the representation of a credible person, that a felony has been committed, and that the offender is about to escape, so that there is no time to procure a warrant, such peace officer may, without warrant, pursue and arrest the accused." Under article 14.04, there are four basic requirements that must be met: (1) the person who gives the information to the peace officer must be credible; (2) the offense must be a felony; (3) the offender must be about to escape; and (4) there must be no time to procure a warrant. Crane, 786 S.W.2d at 346.

At the hearing on the motion to suppress, Officer Owens testified that he responded to a disturbance involving a possible stabbing. When he arrived at the scene he observed Albert holding a bloody washcloth on complainant's neck and was told by several witnesses that appellant had cut complainant. When Officer Heyse arrived as Owens's backup, Owens relayed the facts to him and Albert offered to ride with Heyse to locate appellant, whom he believed had gone to his brother's residence. Albert also indicated

a sense of urgency to Heyse believing appellant was on his way out of town. As they approached the location of the brother's residence, Albert observed a car at the end of the alley and identified appellant, a passenger in the back seat of the car, as the person who committed the offense. Officer Heyse observed that the car was also occupied by two other adults and some children, later identified as appellant's brother, his wife, and their four children. Heyse activated the lights of his patrol car and pulled directly in front of the car appellant was riding in to block it from leaving the alley. Knowing that appellant was armed, he had him exit the car with his arms raised and drop to the ground. Appellant was handcuffed and Heyse conducted a pat down search that lead to discovery of the knife used to cut complainant.

Appellant concedes the arresting officer had probable cause to believe a felony had been committed, but argues that there is no evidence from a credible person to indicate escape or lack of time to obtain a warrant. He contends that riding in a car with family members and children is not evidence of escape. Where a named informant is a private citizen whose only contact with the police is a result of having witnessed a criminal act committed by another, the credibility and reliability of the information is inherent. Esco v. State, 668 S.W.2d 358, 360-61 (Tex.Cr.App. [Panel Op.] 1982). While our sister courts have extended this credibility to crime victims and complaining witnesses, we are mindful that police should remain alert to the existence of any circumstances which would make that presumption inoperative in a particular case. See Cornejo v. State, 917 S.W.2d 480,

13

483 (Tex.App.–Houston [14th Dist.] 1996, pet. ref'd); Nelson v. State, 855 S.W.2d 26, 30 (Tex.App.–El Paso 1993, no pet.); *Cf.* Mungia v. State, 911 S.W.2d 164, 167 (Tex.App.–Corpus Christi 1995, no pet.).

A showing of escape does not need to be of a factual nature beyond a reasonable doubt, but need only establish that the officer was acting upon satisfactory proof that the suspect is about to escape. Dejarnette v. State, 732 S.W.2d 346, 350 (Tex.Cr.App. 1987). Furthermore, a warrantless arrest may be justified when a police officer, a "credible person," observes conduct which indicates that the offender is about to escape. *Id.* Thus, considering that Officer Heyse had satisfactory proof that appellant had committed a felony and observed him in a moving vehicle with knowledge that he may be leaving town just shortly after the incident is sufficient to establish that there was no time to obtain a warrant, thereby justifying appellant's warrantless arrest and seizure of the knife. Point of error six is overruled.

By point of error seven, appellant contends the trial court erred in denying his requested multiple assailant jury charge. Appellant has not properly preserved this issue for review. In order to preserve error relating to the jury charge there must either be an objection or a requested charge. Boles v. State, 598 S.W.2d 274, 278 (Tex.Cr.App. 1980). "We have interpreted articles 36.14 and 36.15 as dealing with those two distinct situations: an objection to the charge and a requested special instruction, respectively." Vasquez v. State, 919 S.W.2d 433, 435 (Tex.Cr.App. 1996). Under article 36.14 a defendant is

required to object and obtain an adverse ruling to preserve any error. *Id.* However, under article 36.15, if a defendant requests a special charge, no objection is required to preserve error. Guzman v. State, 567 S.W.2d 188, 190 (Tex.Cr.App. 1978). All that is necessary under article 36.15 is that the requested charge be in writing or dictated to the court reporter. *Vasquez*, 919 S.W.2d at 435. From the record before us it appears appellant neither presented the proposed charge in writing to the trial court, nor dictated it to the court reporter. Thus, error, if any, was waived. Point of error seven is overruled.

Accordingly, the judgment of the trial court is affirmed.

Don H. Reavis
Justice

Do not publish.